IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

Cedric Allen Smith #155509      *
Plainitff                       *
                                *       Civil Action No:
vs.                             *       2:07-cv-98-MEF
                                *
Hon: Richard Frank Allen, et al.*
Defendants                      *

## MOTION TO AMEND CIVIL ACTION COMPLAINT

Comes Now, Cedric Allen Smith, the plaintiff, Pro-se, pursuant to Federal rules Of Civil Procedure(S) Rule___, does hereby file, this motion to amend his civil action complaint to additional ground for relief:

The plaintiff Cedric Allen Smith, and others similary situated asserts that the laws that prohibits (subsection (e) "McDonald amendment") from earning incentive goodtime credits, and being properly classified are not valid, and do not constitutionally exsists, as they do not conform to certain constitutional prerequisites, and thus are not laws at all (80-446) subsection (e) page 4, line 14 of the journals of the senate codified in the code of alabama 14-9-41 (e).

The revision of the alabama sentencing law came into effect in the late 1977. This act created a greater sentence enhancement than the prior sentencing act. In 1980 the alabama department of corrections was under federal court sanctions for prison overcrowding. The department of corrections had implemented a goodtime deduction policy that was in the discretion of the (DOC). This policy was soley within the discretion of the dept. of corr, In 1980, acts 80-446 was created

by the alabama legislature. This act awarded each prisoner more goodtime than the prior act, this act also place the department of corrections discretion/policy with the governor of alabama. Incentive goodtime was implemented by the legislature of alabama to encourage good prison behavior and prison rehibilitation. But this act has not been followed by the department of corrections, and has been altered at the hands of rogue politicians.

The Bill Reads:

S. 107. [Journal of the house]. To establish the "Alabama Correctional Incentive Time Act", to provide for a earn deduction from penitentiary and hard labor sentences and to establish the criteria therfor; to create classification measurement of such deductions and eligibility therefor; to require minimum sentences prior to parole eligibility; to authorize the commissioner of the department of corrections to restore certain portions of such deductions lost; to authorize the commissioner to issue, promulgate and implement such rules and regulations necessary to implement the provisions of this act; to specifically repeal sections 14-9-1, 14-9-2, 14-9-4, 14-9-20, 14-9-21, 14-9-22, 14-9-23, 14-9-24, and 14-9-25 of the code of alavbama 1975, and all laws or parts of laws conflicting with this act; to make certain exemptions from the provisions of this act for those persons presently serving as inmates in the penitentiary or at hard labor and for those who are convicted for crimes committed prior to the effective date of this act, so as to provide habitual offenders shall not be eligible for any reductions from sentences.
   Was taken up.


AMENDMENT OFFERED
   Rep. Hines offered the following amendment No.1 to the bill, S.107:
   On page 7, section 8, delete all the language on lines 9 and 10 and insert in lieu thereof: 1982 [question] why is 1982 submitted after Mr, Hines amendment?

   on motion of Rep. Smith(J), the amendment No. 1 to bill, S 107: offered by Rep. Hines to the bill S.107, was tabled.
   Yeas 52; Nays 27.

2.

JOURNAL OF THE HOUSE, 1980
28th day

S. 107 RESUMED

And the bill, S. 107, was read a third time at length and passed. Yeas 74; Nays 15.

The house version of the "act" established each prisoner to receive a greater amount of deductions from their sentence while in a specific class.

On motion of Mr. Cook, said substitute and amendment were laid on the table.

Mr. Cook then offered the following substitute for the Bill, S.B. 107, to wit:

Mr, Cook substituted the amount of incentive time deductions a prisoner can earn while in a particular class. Mr, Cook amendment also stated:

As a prisoner gains a higher classification status he shall not be granted retroactive incentive credit based on the higher classification he has reached, but shall be granted incentive credit based soley on the classification in which he is serving at the time the incentive credit was earned. Nothing in this act shall be interpreted as authorizing an inmate incentive credits based on the highest classification he attains for any period of time in which he was serving in a lower classification or from the date of his sentence.

Provided, however, no person may be placed in class 1 if he or she has been convicted of a Class A felony[as defined by Act No.607, S.33 of the 1977 Regular Session (Acts 1977,p.812), as amended] or as has been sentenced to life, or death, or who has received a sentence for ten years or more in the state penitentiary or in the county jail at hard labor or in any municipal jail. No person may be placed in class 1 if he or she has been convicted of an assault where the victim of such assault suffered the permanent loss or use of permanent partial loss or use of any bodily organ or appendage. No person may be placed in class 1 if he or she has been convicted of a crime involving the perpertration of sexual abuse upon the person of a child under the age

of seventeen years.

The court sentencing a person to prison shall note upon the transcript to accompany such prisoner the fact that he or she has been sentenced as a result of a crime that forbids his or her being classified as a class 1 prisoner.

Mr. McDonald offered the following amendment to the substitute for the Bill, S.B. 107, to wit:

AMENDMENT TO THE COOK SUBSTITUTE FOR S.B. 107

Mr, McDonald amendment stated: On page 4, line 14, delete the words "be placed in Class 1" and insert in lieu thereof the following: receive the benefits of correctional incentive time.

The Bill provided every prisoner to receive goodtime credits, but denied class 1 goodtime to prisoners convicted of a Class "A" felony or who has been sentenced to life, or death, or who has received a sentence for ten(10) years or more in the penitentary or in the county jail at hard labor.
After reading the bill at length, "Senator" McDonald offered the following amendment to substitute S.B. 107. to wit: On page 4, line 14, delete the words "be placed in class 1" and insert in lieu of the following: receive the benefits of correctional incentive time. Senator McDonald was "Careful" and specific as to where to insert his amendment because :be placed in Class 1 appears through-out the entire reading of the bill.  The McDonald amendment, if placed properly in the bill would have prohibited child sexual preditors from receiving any deductions from their sentence, because the bill was not read in length the McDonald amendment was placed in the bill which prohibited the class of prisoners the legislature deemed appropriate to receive a deduction from their sentence, and at the same time, by not placing this amendment in the proper place, child sexual preditors was granted incentive goodtime deductions from their sentence.  The plaintiff argues that the McDonald amendment was not Enacted because it would have went against the legislature purpose of the bill.  The plaintiff states, that even if the McDonald amendment was accepted it was placed in the wrong section and line as requested by senator McDonald.

4.

A similar challenge to this Act was argued in Hilsabeck V. State 477 so 2d 465, <u>the court stated</u>: In considering the legislature history of Act 80-446, we found that there were at least three Senate versions of the act. Ultimately, the "Cook Substitute" which contained the "McDonald Amendment" prevailed to the exclusion of the original bill and the substitute offered by the Judiciary committee. Journal Of the House, May, 1980, pp. 2196-2198.

The legislature history of the act reveals that each senate version contanined provisions designed to restrict "Not Prohibit" the amount of CIT available to specific groups of inmates. Indeed, each version of the senate bill 107 contained a provision which was very similar to that which was very similar to that which is now codified at sub-section(e) of 14-9-41. See Journal of the Senate, May, 1980, pp. 1167-1170..

The plaintiff furthers argues, that if the McDonald amendment was accepted it would prohibits prisoners from being properly classified. If, a prisoner was sentenced to a Class "A" felony or receives a sentence of 10 years or more, that prisoner could never be classified as a class 1, 2, or three prisoner, because those class of prisoners would receive some reduction from their sentence while in that particular class.

By article IV (4) section 45 of the constitution of alabma (1901), all law making authority for the state is vested in the legislature of alabama. This article also prescribes certain forms, modes and procedures that must be followed in order for valid law to exist under the constitution. It is fundamental that nothing can be a law that is not enacted by the legislature prescribed by the constitution and which fails to conform to constitution forms, prerequisites or prohibitions. Upon looking up and studying these laws in the publication, and the amendments to this law, we have realized that they do not adhere to several provisions of the alabama constitution of 1901. These are grounds for challenging a valid law or statute. The following expalins in authorotive details why the laws that governs the plaintiff/prisoners are not valid laws.

Acts 80-446 is legislative: legislative is defined: A regulation promulgated in the following circumstances if congress has explicily left a gap for the agency to fill, there is an expressed delegation of auhtority to the agency to elucidate a specific provision of the

5

statute by regulation "Chevron, 467 U.S. at 843, 104 S. ct 2278 legislative regulations are to be given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

The McDonald Amendment was never read in the house nor, was it read in length/published. The McDonald amendment was codified in the code of alabama as a "Rider" to the "Cook Substitute".
Exparte Coker, 575 so 2d 43, whether the "Bill" was properly enacted into law, then whether the statutory codification of a bill that is not deposited within 10 day period gives it force and effect of law: One of the forms that all laws are required to follow by the constitution of alabama, (1901), is that they contain an enacting style or clause.

The "Cook Substitute" which contains the McDonald amendment does not contain an enactment clause in the Journal of the Senate.

<u>This provision is stated as follows</u>
"Article IV section 45. the style of the laws of this state shall be, "be it enacted by the legislature of Alabama'. The constitutional provision which prescribes an enacting clause for all laws is not directory, but mandatory. This provision is to be strictly adhered to as asserted by the federal circuit court of alabama:

> "petitioner correctly urges that this
> section is <u>mandatory</u> and not directory
> that no equivalent words will suffice;
> and that any departure from the mode
> prescribed is fatal to the enactment
> since, if one departure in style, however
> slight, is,is permitted, another must be
> and the constitutional policy embodied in
> the section would become without any force
> whatever". see: Montgomery Amusement co. v.
> Mpntgomery Traction co, 139 fed. 353 (1905)

The denial of plaintiff incentive goodtime and to be properly classified are without this mandatory constitutional provision.

1. <u>constitutional law. Key 70.1(1)</u>
Legislature's power is plenary unless controlled or limited by otther provisions of the constitution and courts cannot look into wisdon or folly advantages or disadvantages of rules which legislative body adopts to govern its own proceeding. Const. 1901.

<u>What are the Constitutional Rules</u>?
No law shall be passed except by bill, and no bill amended so as to change its original purpose. Section 61. No bill shall become a law until it shall have been referred to and acted upon by standing committe. Section 62. Every bill shall be read on three different days in each house. The final reading to be at length, and passed by a majority vote of Yeas and Nays entered on the journals.
Moreover, we note that section 45 provides, among other things, that no law shall be revided, amended, or the provision there of extended or conferred, by the reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at lemgth.
Thus, statutes which are amended must be re-enacted and published at length. Clearly, the phrase "published at length" was intended to require notice to the citizens of the state.

<u>WHAT IS THE PURPOSE OF THE CONSTITUTIONAL PROVISION</u>
<u>FOR AN ENACTING CLAUSE</u>

To determine the validity of using laws without an enacting clause against citizens, we need to determine the purpose and function of enacting clause: and also to see what problems or"Evils" were intended to be avoided by including such a provision in our state constitution. One object of the constitution mandate for an enacting clause is to show that the law is one enacted by the legislature body which has been given the law making authority under the constitution.

The purpose of thus prescribing an enacting clause-"The style of the acts-is to establish it. To give it permanence, uniformity, and certainty; to identify the act of legislations as of the general assembly; to afford evidence of its legislative statutory nature, and to secure uniformity of identification and thus prevent inadvertance, possibly mistakes and fraud. state v. patterson, 4 S.E.

350, 352, 98 Nc 660 (1887) 82 C.J.S. "statutes, see: 65 P. 104.
Joiner v. State, 155 S.E. 2d, B,19, 223 GA. 367 (1967).
Ferill v. Keel, 151 S.W. 269, 272, 105 ARK. 380 (1912) The failure of a law to display on its face an enacting clause depriving it of essential legality, and renders a statute which omits such clause as a "Nullity" and of no force of law Joiner v. State, supra.

The statute prohibiting the petitioner/prisoners from receving incentive goodtime have no jurisdictional identity and are not authentic laws under the constitution of alabama.
 [see journals of the senate]

The petitioner insist that the exercise of the severance clause defeats the legislative intention of the act and the "McDonald amendment" had been written into the act, it would properly would have not passed.

This case by the plaintiff/prisoners when they discovered that the incentive goodtime statute provided goodtime to serious offenders and sex offenders, but denied goodtime to property offenders and other non violent offenders, the plaintiff also argues that this act has been amended constantly to grant prisoners with longer sentences for more serious crimes to receive incentive goodtime credits,.......
(Q), Was the McDonald amendment bill a pocket veto or a rider?.]

Bill which are pocket vetoed, do not become law through its incorportation in cumulative supplement to code since bill never became law, it could not be subject of statutory codification; const. Art. 5 125. . The courts will take judivial notice of the journals of both houses of the legislature, if there is a material variance between the enrolled bill signed by the governor and the bill actually passed, by the legislature as shown by the journals of the two houses such variance is fatal to the vality of the enactment as a law. Moog v. Randolph, 77 Ala. 597 (1884). Mayor and alderman of west end v. Simmons, 165 ala. 359, 51 so 2d 638 (1910).

The violation of section 61 occurs when the "purpose" of the bill passed is different from the original "purpose" of the bill introduced The purpose of a bill within this section is the general purpose of a bill. Opinion of the justice, 361 so 2d 536.

Opinion of the justice, 892 so 2d 332 "seperation of power" <u>Densmore v. Jefferson County</u>, 813 so 2d 844 (2001) LL Le Petroleum Mictg. V. Department of Revenue 683 so 2d 980 (1996) "Codification of a code "Jones v. Conrad, 673 so 2d 389 (1995), Roe v. Mobile county Appointment Bd., 676 so 2d 1206 (1995), Statutes are to be construed in a manner "that is consistent with the related statutory provisions" John Deere Co. V. Gamble, 523 so 2d 95, Legislative intent is discrenible from the construction of a statute in relation to "the whole law" or to other laws. <u>Henderson by and through Hartsfield V. Alabama Power</u> Co, 627 so 2d 878. When an act was being debated in the house and the senate, Legislature heard all arguments for and aginst the placinng of caps, and another legislature composed of different represetives and senators, might reach a different conclusion than the legislature that passed this act.

"The cardinal rule for construction of a statute is to ascertain the legislature intent, which must be determined by examining the statute as whole in lights of its general purpose. <u>Gulf Coast Media V. Mobile Press Register Inc</u>, 470 so 2d 1211 (1985) "One approach in determining the legislative purpose and intent is to examine the prior law and related statutes, on the subject embraced in the statute being construed <u>State V. Motor Lines Inc</u>, 275 Ala. 405 155 so 2d 509 (1963).
In 1980 the alabama legislature passed acts 80-446 Incentive Goodtime Credits. Incentive", means "Something that constitutes a motive or "spur" and serving to encourgae, rouse, or move into action. This goodtime was automatically given to each and every prisoner upon sentence to the penitentiary.

" Good conduct statutes are framed with the intention of improving prison discipline, and have the effect of their enforcement is allowed the credits are said to be in the nature of payment or reward by the state to the conduct of his good behavior, in order to stimulate him to conform to the rules of the institution and to avoid the commission of crimes and misdemeanors during his imprisonment, such statutes are prompted by the highest motive of humanity, and are lokked on with favor by federal and state legislatures". 21 R.C.L. 1192 L 26 (Clay Digest P. 406 J67) statutes was enacted "for encouragement of the convicts themselves with and propriety. In construing these statutes this purpose should, of course, have appropriate consideration. The court held in <u>Baker V. Baxley (1977)</u>..."so where the language of the statute is reasonably plain in its meaning, such interpretation and pratice will

be nevertheless declared and enforce and expressed..." Landgraf V. USI film Products, 128 L. ed 229-retroactive legislation prsents problems of unfairness that are more serious than those imposed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transaction. "The rule of law is defeasible entitlement of persons to have their behavior governed by rules publicly fired in advance: Lynce V. Mathis, 137 L.ed 2d 63, Collins V. Youngblood, 497 W 37, 43 Led 2d 30, Weaver V Graham, 67 L.ed 2d 17, 101 S. ct 960, Johnson V. United States, 146 L.ed 2d 727, Cal. Dept. of Corrections V. Morales, 131 L.ed 2d 588 Tunick V. Safir, 209 F. 3d 498 (2nd Cir 2000), Stephen V. Thomas, 19. L ed 3d 498 (10thcir) 1994. Hunt V. Nucuer Regulatory Commission, 611 F. 2d 332. That legislative history must always be examined regardless of the language of the statute. Connecticut Board of Pardons V. Umschat, 69 Led 2d 158. Brooks V. State, 622 so 2d 447 Inmates equal protection challenge to system that awarded goodtime credits to some, but not all prisoners required court to inquire only whether challenged distinction rationally futhered some legitimate purpose. Legislative decision to permit retroactive grant goodtime credits to all but certain class of sex offenders, with result that members of this class were treated differently from other kinds of sex offenders, violated the equal protection rights.

### CONCLUSION

The plaintiff respectfully ask this honorable court to review the senate and the legislature journals and declare this statute unconstitution.

_Cedric Allen Smith_
CEDRIC ALLEN SMITH

Cec_____ 509
Fountain 3800
Atmore, Al 36503

OFFiCE OF The Cl
United States District
P.O. Box 711
Montgomery, Al

LEGAL

*Nays:*

Reps.: Adams (C), Adams (H), Albright, Amari, Barton, Blake, Cabaniss, Cobb, Cosby, Crow, Dial, Dixon, Drinkard, Ford, Gafford, Greer, Gregg, Grimsley, Grouby, Hall, Hammett, Harper (T), Harvey, Holley, Johnson (R. G.), Johnson (Roy), Laird, Langford, Letson, Lewis, McKee, McMillan, Minus, Mitchell, Naramore, Olive, Owens, Payne, Pegues, Rains, Riddick, Sasser, Seibels, Shavers, Shoemaker, Smith (C), Smith (J), Smith (M), Stewart, Stout, Turnham, Venable, Waggoner, Ward, Whatley, Wyatt and Zoghby.

—57

## SPECIAL ORDER RESUMED

And the bill:

S. 107. To establish the "Alabama Correctional Incentive Time Act"; to provide for earned deductions from penitentiary and hard labor sentences and to establish certain criteria therefor; to create classifications for measurement of such deductions and eligibility therefor; to require minimum sentences prior to parole eligibility; to authorize the commissioner of the department of corrections to restore certain portions of such deductions lost; to authorize the commissioner to issue, promulgate and implement such rules and regulations necessary to implement the provisions of this act; to specifically repeal Sections 14-9-1, 14-9-2, 14-9-4, 14-9-20, 14-9-21, 14-9-22, 14-9-23, 14-9-24, and 14-9-25 of the Code of Alabama 1975, and all laws or parts of laws conflicting with this act; to make certain exemptions from the provisions of this act for those persons presently serving as inmates in the penitentiary or at hard labor and for those who are convicted for crimes committed prior to the effective date of this act, so as to provide that such prisoners shall earn deductions from sentences as presently provided by law; and to provide habitual offenders shall not be eligible for any deductions from sentences.

Was taken up.

## AMENDMENT OFFERED

Rep. Hines offered the following amendment No. 1 to the bill, S. 107:

On page 7, Section 8, delete all the language on lines 9 and 10 and insert in lieu thereof: 1982

## AMENDMENT TABLED

On motion of Rep. Smith (J), the amendment offered by Rep. Hines to the bill, S. 107, was tabled.

Yeas 52; Nays 27.

*Yeas:*

Reps.: Adams (C), Albright, Amari, Barton, Bedsole, Bennett, Blake, Bowling, Cabaniss, Cosby, Crow, Daniels, Dixon, Drinkard, Edwards, Ford, Gafford, Gilmer, Greer, Grouby, Hall, Hammett, Harvey, Kelley, Laird, Letson, Lewis, McKee, Mitchell, Moore, Naramore, Olive, Owens, Payne, Pegues, Rains, Ray, Riddick, Sasser, Seibels, Shavers, Smith (C), Smith (J), Smith (M), Starkey, Stout, Turner, Waggoner, Ward, Whatley, Wyatt and Zoghby.

—52

*Nays:*

Mr. Speaker, Buskey, Campbell, Carothers, Cates, Coburn, Dial, Gregg, Grimsley, Harper (T), Hilliard, Hines, Holmes, Howard, Johnson (R. G.), Kennedy, Langford, McMillan, Nevett, Reed, Shoemaker, Stewart, Trammell, Tucker, Turnham, Venable and Williams.

—27

## AMENDMENT OFFERED

Rep. Hines offered the following amendment No. 2 to the bill, S. 107:

On page 7, Section 8, delete all the language on lines 9 and 10 and insert in lieu thereof: 1981

## AMENDMENT TABLED

On motion of Rep. Smith (J), the amendment No. 2 offered by Rep. Hines to the bill, S. 107, was tabled.

Yeas 54; Nays 29.

*Yeas:*

Reps.: Adams (C), Albright, Amari, Barton, Bedsole, Blake, Bowling, Cabaniss, Cheatwood, Clark (G), Cobb, Cosby, Drinkard, Edwards, Ford, Gafford, Greer, Grimsley, Grouby, Hall, Harvey, Holley, Johnson (R. G.), Johnson (Roy), Kelley, Laird, Letson, Lewis, McKee, Manley, Mitchell, Moore, Naramore, Olive, Owens, Payne, Pegues, Rains, Riddick, Sandusky, Sasser, Seibels, Shavers, Shoemaker, Smith (C), Smith (J), Smith (M), Starkey, Stout, Waggoner, Ward, Whatley, Wyatt and Zoghby.

—54

*Nays:*

Reps.: Bennett, Buskey, Campbell, Carothers, Cates, Clark (W), Coburn, Crow, Daniels, Dixon, Gregg, Harper (T), Harrison, Hilliard, Hines, Holmes, Howard, Kennedy, Langford, McMillan, Nevett, Penry, Stewart, Trammell, Tucker, Turner, Turnham, Venable and Williams.

—29

## MESSAGE FROM THE SENATE

Mr. Speaker:

The President and Presiding Officer of the Senate having signed the following Senate Bills, your signature thereto is requested:

S. 48. To amend Section 41-16-50 of the Code of Alabama 1975, relating to awarding certain public contracts involving $2,000 or more, so as to eliminate certain circumstances under which the contract may be awarded to other than the lowest bidder.

Also:

S. 318. To establish the Alabama Human Resources Board to utilize all available manpower in the state; to provide for the membership of the board, to authorize the board to assign employable persons who receive public assistance to public works projects; to authorize the Commissioner of Pensions and Security to submit names of said persons; to establish the compensation of said persons; to provide for penalties for failure to do the assigned work; to establish criteria for those exempt from the program and provide for periodic review by the Department of Pensions and Security.

McDOWELL LEE,
Secretary.

### SIGNING OF SENATE BILLS

The Speaker of the House, in the presence of the House, immediately after the titles had been publicly read by the Clerk, the reading at length having been dispensed with by a two-thirds vote of a quorum present, signed the Bills, the titles of which are set out in the above and foregoing Message from the Senate.

### S. 107 RESUMED

And the bill, S. 107, was read a third time at length and passed.

Yeas 74; Nays 15.

*Yeas:*

Mr. Speaker, Adams (C), Albright, Amari, Barton, Bedsole, Bennett, Blake, Bowling, Cabaniss, Carothers, Cates, Cheatwood, Clark (G), Cobb, Coburn, Cosby, Crow, Daniels, Dial, Dixon, Drinkard, Edwards, Ford, Gafford, Goodwin, Greer, Gregg, Grimsley, Grouby, Hall, Hammett, Harper (T), Harvey, Holley, Johnson (R. G.), Johnson (Roy), Kelley, Laird, Letson, Lewis, McKee, Manley, Mitchell, Moore, Naramore, Olive, Owens, Payne, Pegues, Penry, Rains, Ray, Riddick, Sandusky, Sasser, Seibels, Shavers, Shoemaker, Smith (C), Smith (J), Smith (M), Starkey, Stewart, Stout, Trammell, Turner, Venable, Waggoner, Ward, Whatley, Williams, Wyatt and Zoghby.

—74

*Nays:*

Reps.: Buskey, Campbell, Clark (W), Harrison, Hilliard, Hines, Holmes, Horn, Howard, Kennedy, Langford, McMillan, Reed, Tucker and Turnham.

—15

### MESSAGE FROM THE SENATE

Mr. Speaker:

The Senate has amended as therein shown and, as amended, has passed the following House Bill and returns same herewith to the House:

H. 697. To amend Sections 40-13-2, 40-13-5 and 40-13-6 of the Code of Alabama 1975 relating to the levy and rate and deposit, disbursement and refund of the proceeds from certain coal severance taxes so as to provide that such proceeds that were formerly refunded shall be credited to the Treasury of the State General Fund.

McDOWELL LEE,
Secretary.

### SENATE MESSAGE

Rep. Adams (H) offered the motion that the House non-concur in the Senate amendment to the bill, H. 697, said Senate amendment being as follows:

Amend House Bill No. 697 Page 1 Line 39, by striking out the figure "$50" after the word "of" and insert in lieu thereof the figure "$135"

### SUBSTITUTE MOTION TABLED

On motion of Rep. Adams (H), the substitute motion offered by Rep. Johnson (Roy) that the House concur in the Senate amendment, was tabled.

Yeas 56; Nays 23.

*Yeas:*

Mr. Speaker, Adams (C), Albright, Bedsole, Blake, Buskey, Campbell, Carothers, Cates, Clark (G), Clark (W), Coburn, Cosby, Daniels, Dial, Dixon, Drinkard, Edwards, Ford, Gilmer, Greer, Gregg, Grimsley, Grouby, Hall, Hammett, Harper (T), Harrison, Holley, Horn, Johnson (R. G.), Kelley, Kennedy, Laird, Letson, McKee, Manley, Moore, Owens, Pegues, Penry, Riddick, Sandusky, Sasser, Seibels, Shoemaker, Smith (C), Smith (J), Smith (M), Starkey, Stewart, Venable, Ward, Whatley, Wyatt and Zoghby.

—56

*Nays:*

Reps.: Amari, Barton, Cabaniss, Cheatwood, Cobb, Crow, Gafford, Harvey, Hilliard, Holmes, Johnson (Roy), Langford, Lewis, McMillan, Naramore, Olive, Payne, Rains, Reed, Trammell, Turner, Turnham and Waggoner.

—23

The question was then on the motion offered by Rep. Adams (H) that the House non-concur in the Senate amendment to the bill, H. 697, and request a Committee on Conference on the disagreement of the two Houses, and the motion to non-concur was adopted.

Yeas 60; Nays 22.

*Yeas:*

Mr. Speaker, Adams (C), Albright, Barton, Bedsole, Bennett, Blake, Bowling, Buskey, Campbell, Carothers, Cates, Clark (G), Clark (W), Coburn, Cosby, Daniels, Dial, Dixon, Drinkard, Edwards, Ford, Gilmer, Greer, Grimsley, Grouby, Hall, Hammett, Harper (T), Harrison, Holley, Horn, Johnson (R. G.), Kelley, Kennedy, Laird, Letson, McKee, McMillan, Manley, Moore, Pegues, Penry, Reed, Riddick, Sandusky, Sasser, Seibels, Shoemaker, Smith (J), Smith (M), Starkey, Stewart, Turnham, Venable, Ward, Whatley, Williams, Wyatt and Zoghby.

—60

*Nays:*

Reps.: Amari, Cabaniss, Cheatwood, Cobb, Crow, Harvey, Hilliard, Holmes, Howard, Johnson (Roy), Langford, Lewis, Naramore, Olive, Owens, Payne, Rains, Smith (C), Trammell, Tucker, Turner and Waggoner.

—22

| S. B. 490 | 95 | Commodities, sold by bushel or barrel |
| S. B. 535 | 88 | Council on Arts & Humanities, Merit sys. |
| S. B. 58 | 9 | National Guard |
| S. B. 60 | 9 | National Guard |
| S. B. 8 | 10 | Soc. sec. no. of driver on accident reports |
| S. B. 510 | 83 | Criminal Code, 1979 Laws Incorp. into code |

On motion of Mr. McDonald, the Resolution was adopted by the Senate.

Mr. Denton offered the following Senate Resolution, to-wit:

S. R. 171. COMMENDING MASTER CLAY BLANKENSHIP AND R. E. THOMPSON ELEMENTARY SCHOOL, TUSCUMBIA, ALABAMA.

Which was adopted.

## UNFINISHED BUSINESS
### BILLS ON THIRD READING RESUMED

The Senate proceeded to consideration of the Unfinished Business for today, the first item of which was the Bill:

S. 107. To repeal any laws expressly or impliedly sanctioning any deductions from penitentiary and hard labor sentences automatically made and without exceptionally good behavior and industriousness by the inmate.

The Standing Committee on Judiciary reported the following substitute for the Bill, S. B. 107, to-wit:

### COMMITTEE SUBSTITUTE FOR S. B. 107

A BILL
TO BE ENTITLED
AN ACT

To regulate the deductions from penitentiary and hard labor sentences for earned good behavior by repealing Sections 14-9-1, 14-9-2, 14-9-4, 14-9-20, 14-9-21, 14-9-22, 14-9-23, 14-9-24 and 14-9-25, Code of Alabama, 1975; so as to grant deduction from sentence to those prisoners sentenced after the passage of this Act.

Be It Enacted by the Legislature of Alabama:

Section 1. Each prisoner who has been or shall hereafter be convicted of any offense against the laws of the State of Alabama and is confined, in execution of the judgment or sentence upon any such conviction, in the penitentiary or at hard labor for the county or in any municipal jail for a definite or indeterminate term, other than for life, whose record of conduct shows that he has faithfully observed the rules for a period of time to be specified by this Act may be entitled to earn a deduction from the term of his sentence as follows:

"(1) Ninety days for each thirty days actually served while the prisoner is classified as a Class I prisoner.

"(2) Sixty days for each thirty days actually served while the prisoner is a Class II prisoner.

"(3) Thirty days for each thirty days actually served while the prisoner is a Class III prisoner.

"(4) No good time shall accrue during the period the prisoner is classified as a Class IV prisoner.

"Within 90 days after the effective date of this act, the commissioner of the department of corrections shall establish and publish in appropriate directives certain criteria not in conflict with this act for Class I, II, III, and IV prisoner classifications. Such classifications shall encompass consideration of the prisoner's behavior, discipline, work practices and job responsibilities.

Class I is set aside for those prisoners who are considered to be trustworthy in every respect and who, by virtue of their work habits, conduct and attitude of cooperation have proven their trustworthiness. An example of Class I inmate would be one who could work without constant supervision of a security officer.

Class II is that category of prisoners whose jobs will be under the supervision of a correctional employee at all times.

Class III is for prisoners with special assignments. They may not receive any of the privileges of Class I and II inmates.

All inmates sentenced into the Alabama State Penitentiary System shall be placed upon sentencing in Class IV and shall remain there minimum period of six months.

No inmate may reach any Class without first having gone through a meeting the requirements of all lower classifications.

Persons serving sentences in the Alabama State Penitentiary who a wanted in other states for a crime or crimes committed there and who have charges of the felony grade pending against them in this state or any other state shall not be appointed trusty.

As a prisoner gains a higher classification status he shall not be gran retroactive incentive credit based on the higher classification he has reach but shall be granted incentive credit based solely on the classification which he was serving at the time the incentive credit was earned. Nothing this act shall be interpreted as authorizing an inmate incentive credits ba on the highest classification he attains for any period of time in which he serving in a lower classification or from the date of his sentence.

"Provided, however, no person may be placed in Class I if he or she been convicted of a Class A felony or punished as if he or she had committee Class A felony. No person may be placed in Class I if he or she has b convicted of an assault where the victims of such assault suffered the per nent loss or use of permanent partial loss or use of any bodily orga appendage. No person may be placed in Class I if he or she has been convic of a crime involving the perpetration of sexual abuse upon the person child under the age of 17 years.

"If during the term of imprisonment a prisoner commits an offens violates a rule of the department of corrections, all or any part of his cor tional incentive time accrued pursuant to this section may be forfeited

1168    JOURNAL OF THE SENATE, 1980
            24th Day

"When a prisoner is serving two or more terms of imprisonment and the sentences run consecutively, then all such sentences shall be combined for the purpose of computing deductions for correctional incentive time and release date; however, the actual deduction from sentence for correctional incentive time provided by this section shall apply only to sentences being served and to be served.

"When a prisoner is serving two or more sentences which run concurrently, the sentence which results in the longer period of incarceration yet remaining shall be considered the term to which such prisoner is sentenced for the purpose of computing his release date and correctional incentive time. When computing the deductions allowed in this section on indeterminate sentences the maximum sentence shall be the basis for the computation. The provisions of this section shall be administered by the chief administrative officer of the penal institution as it applies to prisoners in any state penal institution, by the sheriff of the county as it applies to prisoners in any county jail and by the chief of police as it applies to prisoners in any municipal jail.

Section 2. No deduction from sentence provided for by this act will be allowed for any time period served on parole. No deduction from sentence provided by this act will be used for determining an inmate's eligibility for parole.

Section 3. Any good conduct time credit earned by or otherwise granted to a prisoner prior to enactment of this Act under laws existing prior to the passage of this Act shall be computed by the department of corrections through the date next preceding the effective date of this Act under such laws and such time credit, less any forfeited, shall be granted to the prisoner.

Section 4. Sections 14-9-1, 14-9-2, 14-9-4, 14-9-20, 14-9-21, 14-9-22, 14-9-23, 14-9-24 and 14-9-25, Code of Alabama 1975, relating to the commutation of sentences, are hereby repealed.

Section 5. Nothing herein shall be interpreted to give any retroactive effect to this Act. Nothing contained in this Act shall in any way be construed to repeal or affect the provisions of Section 13A-5-9 of the Code of Alabama 1975, as amended, or any other statute heretofore or hereinafter enacted in this state dealing with habitual felony offenders or the sentencing of such offenders.

Section 6. This Act shall be known as the "Alabama Correctional Incentive Time Act."

Section 7. The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.

Section 8. This act shall become effective immediately upon its passage and approval by the Governor or upon its otherwise becoming a law.

The Standing Committee on Judiciary reported the following amendment to the substitute for the Bill, S. B. 107, to-wit:

COMMITTEE AMENDMENT TO SUBSTITUTE FOR S. B. 107

Amend substitute for Senate Bill 107, Page 1, Section 1, Line 27, by striking out the words "has been or".

            REGULAR SESSION                    1169
            24th Day

On motion of Mr. Cook, said substitute and amendment were laid on the table.

Mr. Cook then offered the following substitute for the Bill, S. B. 107, to-wit:

SUBSTITUTE FOR S. B. 107

A BILL
TO BE ENTITLED
AN ACT

To establish the "Alabama Correctional Incentive Time Act"; to provide for earned deductions from penitentiary and hard labor sentences and to establish certain criteria therefor; to create classifications for measurement of such deductions and eligibility therefor; to require minimum sentences prior to parole eligibility; to authorize the commissoner of the department of corrections to restore certain portions of such deductions lost; to authorize the commissioner to issue, promulgate and implement such rules and regulations necessary to implement the provisions of this act; to specifically repeal Sections 14-9-1, 14-9-2, 14-9-4, 14-9-20, 14-9-21, 14-9-22, 14-9-23, 14-9-24 and 14-9-25 of the Code of Alabama 1975, and all laws or parts of laws conflicting with this act; to make certain exemptions from the provisions of this act for those persons presently serving as inmates in the penitentiary or at hard labor and for those who are convicted for crimes committed prior to the effective date of this act, so as to provide that such prisoners shall earn deductions from sentences as presently provided by law; and to provide habitual offenders shall not be eligible for any deductions from sentences.

Be It Enacted by the Legislature of Alabama:

Section 1. This act shall be known as the "Alabama Correctional Incentive Time Act."

Section 2. Each prisoner who shall hereafter be convicted of any offense against the laws of the State of Alabama and is confined, in execution of the judgment or sentence upon any conviction, in the penitentiary or at hard labor for the county or in any municipal jail for a definite or indeterminate term, other than for life, whose record of conduct shows that he has faithfully observed the rules for a period of time to be specified by this act may be entitled to earn a deduction from the term of his sentence as follows:

(1) Seventy-five days for each thirty days actually served while the prisoner is classified as a Class I prisoner.

(2) Forty days for each thirty days actually served while the prisoner is a Class II prisoner.

(3) Twenty days for each thirty days actually served while the prisoner is a Class III prisoner.

(4) No good time shall accrue during the period the prisoner is classified as a Class IV prisoner.

Within 90 days after the effective date of this act the commissioner of the department of corrections shall establish and publish in appropriate directives certain criteria not in conflict with this act for Class I, II, III, and IV prisoner classifications. Such classifications shall encompass consideration of the prisoner's behavior, discipline, work practices and job responsibilities

Class I is set aside for those prisoners who are considered to be trustworthy in every respect and who, by virtue of their work habits, conduct and attitude of cooperation have proven their trustworthiness. An Example of a Class I inmate would be one who could work without constant supervision by a security officer.

Class II is that category of prisoners whose jobs will be under the supervision of a correctional employee at all times. Any inmate shall remain in this classification for a minimum period of six months before being eligible for Class I.

Class III is for prisoners with special assignments. They may not receive any of the privileges of Class I and II inmates. Any inmate shall remain in this classification for a minimum period of three months before being eligible for Class II.

Class IV is for prisoners not yet classified and for those who are able to work and refuse, or who commit disciplinary infractions of such a nature which do not warrant a higher classification, or inmates who do not abide by the rules of the institution. Inmates who are classified in this earning class receive no correctional incentive time. This class is generally referred to as "flat time" or "day-for-day." Any inmate shall remain in this classification for a minimum period of thirty days before being eligible for Class III.

No inmate may reach any Class without first having gone through and meeting the requirements of all lower classifications.

As a prisoner gains a higher classification status he shall not be granted retroactive incentive credit based on the higher classification he has reached, but shall be granted incentive credit based solely on the classification in which he was serving at the time the incentive credit was earned. Nothing in this act shall be interpreted as authorizing an inmate incentive credits based on the highest classification he attains for any period of time in which he was serving in a lower classification or from the date of his sentence.

Provided, however, no person may be placed in Class I if he or she has been convicted of a Class A felony [as defined by Act No. 607, S. 33 of the 1977 Regular Session (Acts 1977, p. 812), as amended] or has been sentenced to life, or death, or who has received a sentence for ten years or more in the state penitentiary or in the county jail at hard labor or in any municipal jail. No person may be placed in Class I if he or she has been convicted of an assault where the victims of such assault suffered the permanent loss or use of permanent partial loss or use of any bodily organ or appendage. No person may be placed in Class I if he or she has been convicted of a crime involving the perpetration of sexual abuse upon the person of a child under the age of seventeen years.

The court sentencing a person to prison shall note upon the transcript to accompany such prisoner the fact that he or she has been sentenced as a result of a crime that forbids his or her being classified as a Class I prisoner.

If during the term of imprisonment a prisoner commits an offense or violates a rule of the department of corrections, all or any part of his correctional incentive time accrued pursuant to this section may be forfeited.

The commissioner of the department of corrections shall have the power to restore to any prisoner who has heretofore, or who may hereafter, forfeit the deductions allowed him or her for good behavior, work habits and cooperation, or good conduct, by violating any existing law or prison rule or regulation such portion of his deduction for good conduct or good behavior as may be proper in his judgment, upon recommendation and evidence submitted to him by the warden in charge.

When a prisoner is serving two or more terms of imprisonment and sentences run consecutively, then all such sentences shall be combined the purpose of computing deductions for correctional incentive time release date; however, the actual deduction from sentence for correctic incentive time provided by this section shall apply only to sentences t served.

When a prisoner is serving two or more sentences which run conc rently, the sentence which results in the longer period of incarceration remaining shall be considered the term to which such prisoner is senten for the purpose of computing his release date and correctional incentive t under the provisions of this act. When computing the deductions allowe this section on indeterminate sentences the maximum sentence shall be basis for the computation. The provisions of this section shall be admi tered by the chief administration officer of the penal institution as it app to prisoners in any state penal institution, by the sheriff of the county a applies to prisoners in any county jail and by the chief of police as it applie prisoners in any municipal jail.

Section 3. No deduction from sentence provided for by this act wil allowed for any time period served on parole. No deduction from sente provided by this act will be used for determining an inmate's eligibility parole.

Section 4. (a) Any good conduct time credit earned by or otherw granted to a prisoner prior to enactment of this act, under laws existing pr to the passage of this act, shall be computed by the department of correcti through the date next preceding the effective date of this act under such l and such time credit, less any forfeited, shall be granted to the prisone

(b) The provisions of this act shall not be applicable to any priso serving time prior to the effective date of this act, nor to any person v commits an offense prior to the effective date of this act, even if such perso sentenced afte, the effective date of this act. Deductions from the sentence such persons shall be earned at the same rate as provided by law prior to enactment of this act. All constitutional rights, remedies and privilege: such persons shall not be reduced, diminished or abolished.

Section 5. Sections 14-9-1, 14-9-2, 14-9-4, 14-9-20, 14-9-21, 14-9- 14-9-23, 14-9-24 and 14-9-25, Code of Alabama 1975, relating to the comr tation of sentences, are hereby specifically repealed, and all laws or part laws which conflict with this act are hereby repealed.

Section 6. Nothing herein shall be interpreted to give any retroact effect to this act. Nothing contained in this act shall in any way be constru to repeal or affect the provisions of Section 1235 of Act No. 607 of the 1! Regular Session, as amended, and now appearing as Section 13A-5-9 of Code of Alabama 1975, as amended, or any other statute heretofore hereinafter enacted in this state dealing with habitual felony offenders or sentencing of such offenders.

Section 7. The provisions of this act are severable. If any part of t act is declared invalid or unconstitutional, such declaration shall not aff the part which remains.

Section 8. This act shall become effective immediately upon its p sage and approval by the Governor, or upon its otherwise becoming a la

Mr. McDonald offered the following amendment to the substitute for Bill, S. B. 107, to-wit:

"SEE TOP OF NEXT PAGE"

AMENDMENT TO THE COOK SUBSTITUTE FOR S. B. 107

On page 4, line 14, delete the words "be placed in Class I" and insert in lieu thereof the following: receive the benefits of correctional incentive time.

MESSAGE FROM THE HOUSE

Mr. President:

The House has originated and passed the following House Bills and ordered same sent forthwith to the Senate without engrossment:

By Rep. Waggoner (with notice and proof):

H. 882. Relating to Shelby County; providing for a referendum on the question of replacing the probate judge as chairman of the county governing body; further providing for the salary, term of office, vacancy, bond, and election of said chairman.

I hereby certify that the Notice & Proof is attached to the Bill, H. B. 882, as required in the General Acts of Alabama, 1975 Act No. 919.

JOHN W. PEMBERTON,
Clerk.

Also:

By Rep. Waggoner (with notice and proof):

H. 923. An Act, to alter, re-arrange and extend the boundaries and corporate limits of the City of Pelham, Alabama, so as to incorporate certain territory as described herein.

I hereby certify that the Notice & Proof is attached to the Bill, H. B. 923, as required in the General Acts of Alabama, 1975 Act No. 919.

JOHN W. PEMBERTON,
Clerk.

Also:

By Reps. Manley and Pegues (with notice and proof):

H. 954. Relating to Marengo County; providing for an additional allowance for election officials who work at polling places.

I hereby certify that the Notice & Proof is attached to the Bill, H. B. 954, as required in the General Acts of Alabama, 1975 Act No. 919.

JOHN W. PEMBERTON,
Clerk.

Also:

By Reps. Manley and Pegues (with notice and proof):

H. 955. Relating to Marengo County; providing for an expense allowance for members of the Board of Education and repealing Act No. 212, H. 591, 1957 Regular Session, (Acts 1957, p. 269).

I hereby certify that the Notice & Proof is attached to the Bill, H. B. 955, as required in the General Acts of Alabama, 1975 Act No. 919.

JOHN W. PEMBERTON,
Clerk.

Also:

By Reps. Manley and Pegues (with notice and proof):

H. 956. Relating to Marengo County; providing further for the expense allowance and mileage for the chairman and members of the county board of equalization; providing such payments shall be payable from state and local funds as provided by law; and giving the provisions of the Act retroactive effect.

I hereby certify that the Notice & Proof is attached to the Bill, H. B. 956, as required in the General Acts of Alabama, 1975 Act No. 919.

JOHN W. PEMBERTON,
Clerk.

Also:

By Rep. Manley and Pegues:

H. 957. To repeal Act No. 355, H. 896 of the 1969 Special Session (Acts 1969, Vol. I, p. 728), entitled, "An Act To apply only in countes having populations of not less than 27,000 nor more than 30,000; providing expense allowances for members of the county board of equalization payable from the general funds of the county; and giving the act retroactive effect."

Also:

By Rep. McCorquodale (with notice and proof):

H. 963. Relating to Clarke County; providing an additional expense allowance for the tax collector and tax assessor of the county, as set by the county commission.

I hereby certify that the Notice & Proof is attached to the Bill, H. B. 963, as required in the General Acts of Alabama, 1975 Act No. 919.

JOHN W. PEMBERTON,
Clerk.

Also:

By Rep. Gilmer (with notice and proof):

H. 966. Relating to Fayette County; giving the county commission certain powers and authority in regard to performing work or services upon private property and selling material to churches, schools, individuals or non-profit associations or corporations; setting the conditions under which such work can be done or materials sold; and establishing the procedure governing work on private property or the sale of materials under the provisions of this Act.

I hereby certify that the Notice & Proof is attached to the Bill, H. B. 966, as required in the General Acts of Alabama, 1975 Act No. 919.

JOHN W. PEMBERTON,
Clerk.

Also:

By Reps. Cooley and Bowling (with notice and proof):

H. 967. To amend and re-enact Act No. 79-574, H. 995, 1979 Regular Session (Acts 1979, p. 1022), entitled, "An Act Relating to Cullman County; to establish a county personnel board; to provide for the appointment, and